CASE 95—ACTION BY R. G. AYDELOTT V. A. M. BREEDING TO HAVE THE
    COURT DETERMINE IF PLAINTIFF IS OR NOT LIABLE FOR A LOSS RE-
    SULTING FROM AN INVESTMENT OF TRUST FUNDS BY HIM.

# Aydelott v. Breeding.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.   AFFIRMED.

TRUSTS—UNAUTHORIZED INVESTMENT—LIABILITY OF TRUSTEE FOR LOSS
    —RETROSPECTIVE OPERATION OF STATUTE—ATTORNEY'S FEE—COM-
    PENSATION OF TRUSTEE WITHHELD UNTIL LOSS MADE GOOD.

Held:    1. Kentucky Statutes, section 4706, providing that trust.
    funds shall not be invested in the bonds of any railroad unless
    such railroad has been in operation more than ten years, and
    during that time has not defaulted in the payment of its
    bonded debt, applies to all trustees, whether they entered upon
    the discharge of their duties before or after the enactment.
    of the statute.
2  Under that statute a trustee is liable for loss resulting from
    an investment by him of the trust funds in the bonds of a
    railroad which had not been in operation ten years, though pru-
    dent business men may have regarded the investment a safe
    one.
3. Where a trustee failed in a suit brought by him to have the
    court determine that he was not liable for a loss resulting from
    an investment made by him, the court properly refused to allow
    him an attorney's fee therein, and did not err in adjudging
    the costs against him.

Aydelott v. Breeding.

4. It was proper to withhold commission from a trustee until he should make good a loss resulting from an improper investment of the trust funds by him.

5. The acquiescence of the *cestui que trust* in an investment of trust funds forbidden by statute does not relieve the trustee from liability for loss resulting therefrom.

O'NEAL & O'NEAL AND PRYOR & SAPINSKY, FOR APPELLANT.

Mrs. Mary C. Aydelott by her will devised certain property to her daughter, Mrs. Addie M. Breeding. The devise was made to her son, Robert G. Aydelott in trust for Mrs. Breeding as shown by the following extract from her will:

"And the remaining share and part I give, devise and bequeath unto my son Robert G. or successor, in trust, however, and upon the condition always that the said Robert G. Aydelott is to hold, manage, control, invest and reinvest the said share and part, and the proceeds of any and all sales thereof, and that he is to pay over to my daughter, Addie M. Breeding, all of the income arising from and issuing out of said share and part after payment of taxes and other charges thereon, for her sole, separate and exclusive use, for and during each and every year of her life, such income to be received, held, used and enjoyed by my said daughter, free and exempt from all marital rights of any husband she may have, and free from the control of such husband."

"Item 3. For the purpose of executing, and carrying out the trust aforesaid, I hereby authorize and fully empower said trustee, his successor or successors, to sell and dispose of any part or portion of said property whether real or personal, and to invest and reinvest the proceeds of such sale whenever and so often as he may deem advantageous and expedient so to do."

Robert G. Aydelott qualified as trustee under said will, in November, 1889, and is now acting as such trustee. There came into his hands January 1, 1890, $4,505.56. Investments were made and the trust carried out until October 25, 1892, when he invested $1,920 in two bonds of the Louisville, St. Louis & Texas Railroad, of $1,000 each face value, and two bonds of the New Albany Belt & Terminal Line of the par value of $1,000 each, paying therefor $1,600. In the year 1893 both of said companies were placed in the hands of a receiver. Neither had "been in operation more than ten years." The trustee entered into a plan of reorganization and realized for the estate out of the investments $3,257.86 which was a loss to the estate of

Aydelott v. Breeding.

$1,247.07. The trustee brought this suit asking for the judgment of the court to determine who should bear this loss, the plaintiff, R. G. Aydelott, individually, or the trust estate. There were some additional losses making the total loss $1,414.93. The court held that the trustee must account individually for this loss, but allowed him a commission of $225.27 and an attorney's fee of $150, but that the trustee was not entitled to these two amounts until he had "made the corpus of the estate good, $4,505.56 and from this judgment the plaintiff appeals.

1. We claim that the statute, section 4706, Kentucky Statutes, does not apply to this case. The will creating the trust was probated in November, 1889. Plaintiff qualified as trustee in Nov., 1889. Sec. 4706 became a law in April, 1890, and in order to make it apply it will have to be given a retroactive construction, which we contend can not be done unless it clearly be made to appear that such was the intention of the lawmakers, which is not shown.

2. The statute not applying, the will controls, and it gives full discretionary power to the trustee, and he having exercised a reasonable discretion in carrying out the trust, should not be personally held responsible for an error in his judgment.

AUTHORITIES CITED.

Citizens Bank v. Jefferson, 88 Ky., 651; Meriwether v. Same, 3 R., 326; Carter v. Booker, 4 R., 722; Durrett v. Com., 90 Ky., 312; Trimble v. Lebus, 15 R., 85; Perry on Trusts, vol. 1, secs. 459, 467; Twaddell's Appeal, 5 Penn. St., 15; Barton's Estate, 1 Pars., Eq., Penn., 24; Cox v. Faut, 19 R., 1650; Sherman v. Parrish, 53 N. Y., 483.

FAIRLEIGH, STRAUS & EAGLES for appellee.

MOLLOY & UTLEY of counsel.

POINTS AND AUTHORITIES CITED.

1. The appellee contends that section 4706 of the Kentucky Statutes, making it unlawful for trustees to invest trust funds in the securities of railroads which have not been in operation for ten years, or which have not paid interest for ten years upon their securities prior to the investment, is absolutely conclusive of this case. Kentucky Statutes, sec. 4706; Gen. Stat., p. 707; Perry on Trusts, vol. 1, sec. 459 et seq.; Durrett v. Com., 90 Ky., 312; Trimble v. Lebus, 15 Ky. Law Rep., 85; Fidelity v. Glover, 90 Ky., 355.

Vol. 111—54

2. That the attempted acquiescence is not in the slightest established. Adair v. Brimmer, 74 N. Y., 554.

3. That the costs of this proceeding were properly charged against the trustee, since the whole suit was for his benefit, and rendered necessary by his own acts. 27 Am. & Eng. Ency. of Law, p. 304; Hendricks v. Nisbet, 20 Ky. Law Rep., 1667; Clark v. Anderson, 13 Bush, 116; Lupe v. Jones, 15 S. W. Rep., 658.

OPINION OF THE COURT BY JUDGE GUFFY—AFFIRMING.

By the will of Catherine Aydelott the appellant was devised certain property in trust for the appellee, Addie M. Breeding, upon the conditions that he or his successor should hold, manage, control, invest, and reinvest the same, and the proceeds of any and all sales thereof, and pay over to the daughter, Addie M. Breeding, all of the income arising from and issuing out of same, after payment of taxes and other charges thereon; the same to be for her sole and separate and exclusive use during each and every year of her life, to be received and held and used and enjoyed free from all marital rights of any husband she may have, and free from any control of such husband. Said trustee was fully empowered to sell or dispose of any part or portion of said property and estate, whether real or personal, and to invest and reinvest the proceeds of such sale whenever and so often as he may deem advantageous and expedient so to do. At the death of the said daughter the property was to be divided among her children, if any, or their heirs; and, in the event of her dying without descendants, the property should revert to appellant and his brother, Geo. W. It appears that this will was probated on the 4th day of November, 1899, and that soon thereafter the appellant qualified as trustee under the will, and entered upon the execution of the trust. Some time after 1890 he purchased two New Al-

bany Belt & Terminal Line first mortgage 6 per cent.
bonds, of the face value of——, for which he paid, $1,600,
and two first mortgage 6 per cent. bonds of the Louisville,
St. Louis & Texas Railroad, of the face value of $1,000,
for which he paid $1,920.  It seems that the Louisville,
St. Louis & Texas bonds were purchased in October, 1892,
and that the Terminal bonds were purchased some time
before that date. Finally in disposing of the Terminal bonds,
a heavy loss was sustained, and on the Texas bonds a con-
siderable loss was also sustained.  It appears that some
dispute or disagreement arose between the appellant and
appellee in regard to the management and income of the
trust estate, and as a result thereof the appellant insti-
tuted this suit in the Jefferson circuit court for a settle-
ment of the trust, or, at any rate, for a determination as
to whether he should bear the losses before referred to,
or whether the trust estate should bear the loss.  The
petition recites the investment of the funds in the afore-
said securities, and the losses incident thereto.  The final
prayer of the petition is that his accounts as trustee may
be fully settled; that all his acts and doings as such trus-
tee up to this time, and including his said investments,
may be approved by the court; and that he may be given
compensation for his services as such trustee, including
compensation to his attorneys for services to him as such,
including services herein; and for proper relief.  The
cause was referred to a commissioner for settlement.  The
answer may be taken as controverting appellant's right to
have his actions or doings ratified or approved by the
court.  It also traverses the averments of plaintiff that
he had acted prudently, or that he was for any reason
excusable for investing the funds in the securities afore-
said, and also traverses the claim of plaintiff that the loss

incident to said investments should be borne by the trust estate. The defendant finally prayed that the cause be referred to the commissioner, and the plaintiff make a full and complete and accurate statement of the amounts received and disbursed by him, and that all of the said investments be inquired into, and, if not proper and lawful investments, that he be required to make such sums good to the estate, and for proper relief. An amended answer filed shows more specifically the amount of loss sustained by reason of the investments aforesaid, and insists that the appellant should bear the loss individually. The report of the commissioner shows that the amount of money that came to the hands of the trustee was $4,505.56. It seems that the commissioner found that the loss sustained by reason of the investments aforesaid amounted to over $1,400, and that appellant was liable to the said trust estate for same, with legal interest from September, 1893. Various exceptions, were filed to the report. Those of the plaintiff were overruled, and all of the exceptions filed by defendant were overruled, except the exceptions to the report because it allowed an attorney's fee to be paid out of the trust estate to the plaintiff, which exception was sustained. The court upon final hearing adjudged, in effect, that there were in the hands of the trustee securities to the amount of $3,075, leaving a deficit in the principal of the trust fund of $1,430.56, and adjudged that the named securities in the hands of the trustee shall be held and controlled by him as trustee under the terms of the trust, and that the said trustee shall restore to the trust fund, as of June 1, 1899, the said sum of $1,430.56; "and it appears that the trustee collected interest upon the investments made by him up to the 1st of September, 1893, and that no default up to that time in the payment of

interest on the securities held by him was made, and therefore interest upon the principal of the trust fund will be calculated from September 1, 1893, up to June 1, 1899." Interest upon said sum for said period amounts to the sum of $1,554.41. It is adjudged further that the defendant, Addie M. Breeding, is entitled to the said sum of money, being interest aforesaid, less such disbursements as are properly made by the trustee upon the account of the income since said date. Such disbursements amount to the sum of $474.75. After deducting the aggregate of said disbursements from the said interest for said period, there remains a balance of $1,079.66 in the hands of said trustee, which is due and owing by him to the defendant, Addie M. Breeding, for which sum judgment was also rendered, with interest from 1st of June, 1899, and her costs. It was further adjudged that upon the restoration of said deficit in the principal of said trust fund, to wit, $1,430.56, the plaintiff will be entitled to $225.27 as his commission for services up to June 1, 1899, and upon such restoration said commission, amounting to the sum of $225.27, shall be a credit upon the personal judgment of the $1,079.66, with interest hereinbefore rendered. To all of the foregoing judgment the appellant excepted, and prayed an appeal to this court, which was granted.

One of appellant's contentions is that the securities in which he invested the trust fund were by the best financiers and business men regarded as a safe and prudent investment, and that he so regarded it, and that he in good faith was acting for the best interest and protection of the trust fund, as he saw at the time, and therefore the loss should fall upon the trust estate, and not upon him individually. It may be conceded that the proof conduces strongly to show that the aforesaid securities were

regarded as safe and prudent investments by the best financiers and business men in the city of Louisville, where the purchase was made, and in the vicinity of the railroads issuing the bonds so purchased. This evidence considered, taken in connection with the further fact that the appellant would most likely finally fall heir to one-half of the trust fund, seems to establish the good faith and sincerity of appellant. It is, however, argued for appellee that it was not a prudent investment to invest in railroad bonds, and that, too, when the bonds were under par, and the railroads had been but a short time in operation. It is further argued for appellee that section 4706, Ky. St., prohibited such investments of the trust fund. So much of the section as is relied on reads: "But such funds shall not be invested in the bonds or securities of any railroad or other corporation unless such railroad or other corporation has been in operation more than ten years, and during that time has not defaulted in the payment of interest on its bonded debt, or be invested in the bonds of a county, district, town or city that within ten years has defaulted in the payment of the interest on its bonded debt; and a fiduciary shall account for all interests or profits received." It is admitted in this case that neither of the railroads had been in operation ten years prior to the investment aforesaid, but it is contended for appellant that this statute was not enacted until after he entered upon the discharge of his duties as trustee, and that it was not intended to be retroactive; and it is further suggested that the Legislature could not interfere with the vested right he acquired as trustee, which was to invest the funds according to his best judgment, and in such securities as he had a right, upon investigation, to believe would prove a safe and profitable investment. We do not think this

contention is tenable.    It was competent for the Legis-
lature to regulate the duties and responsibilities of trus-
tees, although such trustees might have been appointed
before the enactment of the statute.    The will under
which appellant holds the fund in question did not invest
him with the power to invest the fund in securities that
were not safe and profitable simply because he desired to
do so.    In other words he was not invested with plenary
power to manage the funds independent of the law of the
land.    But it is evident from the will that it was the in-
tention of the testatrix to require a prudent and skillful
management of the fund, or, in other words, he was bound to
manage the fund according to law.    The statute in ques-
tion was in force when the bonds were bought.    This court,
in Safety Vault Co. v. Glover, 90 Ky., 355 (12 R. 329) (14 S.
W., 343), seems to have recognized the statute as controlling
trustees, although they had entered upon the discharge
of their duties long before the enactment of the statute in
question.    We conclude, therefore, that the statute in
question prohibited the investment made, and, this being
true, the appellant must bear the loss incident thereto.

It is argued for appellant that his attorney's fee in this
case should be paid out of the trust estate, and that he
ought not to be taxed with the costs of this suit.    But,
inasmuch as he failed to obtain the relief or object sought
by the institution of this suit, it seems to us that the court
properly refused to allow him his attorney's fee, and did
not err in adjudging the costs of the suit against him.    Of
course, for proper services, independent of this suit, he
would be entitled to proper attorney's fees for any ser-
vices necessarily rendered for him    as    trustee    by    an
attorney.    Complaint    is    also    made    of    the    judg-
ment    withholding    commissions    until    he    restores    to

the corpus of the estate the deficit aforesaid. But we are not inclined to think the court erred in that respect, because it is the duty of appellant to obey the order of the court, and when he has done so he will be entitled to the credit for his services for the sum named in the judgment.

The contention of appellant that he made the investments in question at the instance of appellee is not sufficiently sustained by the evidence, and, if it were, it may well be doubted whether a request upon her part to make the investment would relieve appellant from the responsibility of the loss incident thereto. Certainly her acquiescence in the investment would not have such an effect.

For the reasons indicated, the judgment is affirmed.