## Hackett's Executors v. Hackett's Devisees.

(Decided May 3, 1918.)

Appeal from Madison Circuit Court.

1. Trusts—Executors and Administrators—Investment of Trust Funds—Directions of Will—Authority of Chancellor.—In an action to obtain the advice of the chancellor as to the investment of certain trust funds under a will directing the executors to invest such funds "in good and safe securities," the chancellor is without authority to order such funds invested in real estate in the absence of a showing that good and safe securities could not be found or that such an investment would probably result in loss to the trust estate.

2. Trusts—Investment of Trust Funds—State Warrants.—Since state warrants are non-taxable, and have behind them the entire resources of the state, and are generally regarded by prudent business men as a safe investment, the chancellor may properly order the investment of trust funds in such warrants, even though the warrants are subject to call at any time.

3. Trusts—Investment of Trust Funds—Action for Advice of Chancellor—Interference With Discretion of Executors—Judgment—Reversal.—The executors under a will charging them with the duty of investing certain trust funds, brought suit for a settlement of the estate and for the advice of the chancellor. While the executors did not ask the direction of the chancellor as to the securities in which the trust funds should be invested, the trustees to whom the funds were going did ask that an investment in state warrants be ordered. The funds had been in the hands of the executors for some time. No other investment was suggested by them. The propriety of making the investment was not contested by the executors save to the extent of a mere formal objection to the order. Held, that the order of investment will not be reversed on the ground that it was an interference with the discretion of the executors.

4. Trusts—Costs of Litigation—Attorney Fees—Charges on Fund.—Testator devised to each of his nephews certain property in trust for his use and benefit and that of his wife and infant children residing with him, equally, for and during his life, remainder to his children. The trustee in bankruptcy of each of the nephews brought suit to subject the property to the payment of their debts on the ground that each nephew owned the entire life estate in the trust property. The attorneys representing the trust estate succeeded in defeating the action, but had plaintiff's contention been sustained, the wife and children of each nephew would have been deprived of their interest in the property for a period of several years, and the value of the trust estate would have been materially diminished. Held, that the attorney fees incurred in resisting the suit were for the preservation of the trust estates and were properly payable out of the corpus of the estates.

5. Trusts—Costs of Litigation—Attorney Fees—Allowance—Reasonableness.—In such a case the character and result of the services rendered by one of the attorneys considered, and held that an allowance to him of a fee of $1,000.00 payable out of the two trust estates was not unreasonable.

BURNAM & BURNAM and J. A. SULLIVAN for appellants.

W. B. SMITH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in part and reversing in part.

By the second clause of his will probated in the year 1906, B. C. Hackett, who died a resident of Madison county, devised to his nephew, T. B. Hackett, 300 acres of land in trust for his use and benefit and that of his wife and infant children residing with him, equally, for and during his life with remainder to his children. By the same clause he also devised 250 acres to his nephew, Jacob Hackett, upon the same terms and conditions. By the third clause of his will he devised the Chenault farm to Ira Scudder in trust for the support and education of the children of T. B. and Jacob Hackett by their first wives until the youngest of said children should arrive at age, whereupon said trust was to cease. The fourth clause of the will is as follows:

"Upon the ending of the trust provided for in the third clause of my will as to the Chenault farm I will that my executors hereinafter named do sell and convey my said Chenault lands and all other property and reduce the same to cash. I also will that the residue of my estate of every kind be managed and controlled and held by my executors until said Chenault farm shall be sold as aforesaid, and that then the proceeds of said farm and the proceeds of such other property, as may be in the hands of my executors and all accumulations thereof (after having been reduced to cash) shall be distributed equally among all my heirs-at-law, whomsoever they may be, according to the Kentucky Statutes of descent and distribution, but I will that the parts to which T. B. & Jacob Hackett would otherwise be entitled to receive under this clause of my will do not go to or belong to them and that their parts be paid to them respectively, and to be held by them in trust during their lives for the use and benefit of said Jacob & T. B. Hackett and their wives and children, in the same manner in which they hold the two farms devised to them under the second clause of this will. I also will that the parts to which Jacob & T. B. Hackett shall be entitled to receive aforesaid be invested by my executors in good and safe securities the income be applied as aforesaid, during their lives, and at the death of said T. B. and Jacob Hackett, respectively, said trust funds shall go and belong to all their children and their descendants respectively as aforesaid."

Ira Scudder and the State Bank and Trust Company of Richmond were appointed and qualified as executors.

The trust created by clause three of the will has terminated and the Chenault farm has been sold pursuant to the authority contained in clause four.

This suit was brought by the executors against the devisees to obtain a construction of the will and the advice of the chancellor as to their duties in winding up the estate. One of the questions presented was whether any portion of the proceeds of the Chenault farm could be invested in real estate. T. B. Hackett and Elizabeth Hackett, his wife, filed a petition requesting the court to direct the investment of $3,000.00 of said trust fund going to T. B. Hackett in a tract of land consisting of twenty-eight and one-half acres belonging to Elizabeth Hackett and held by T. B. Hackett as trustee, and adjoining the tract of 300 acres devised to T. B. Hackett in trust. There was proof that the twenty-eight and one-half acre tract was worth more than $3,000.00 and that its purchase would add to the value of the land devised to T. B. Hackett. Upon this showing the chancellor ordered $2,800.00 of the trust fund to be so invested.

Jacob Hackett asked that $2,900.00 of the fund coming to him as trustee be invested in a house and lot in Richmond. In this petition all his children except one, who was a minor, concurred, and the chancellor ordered the investment made.

The balance of the trust fund going to T. B. Hackett and Jacob Hackett, was ordered invested in state warrants.

During the progress of the action, T. B. and Jacob Hackett asked the court to require the executors to pay out of the trust fund a reasonable fee to A. R. Burnam, Jr., and W. B. Smith, for professional services rendered in the case of J. J. Greenleaf, Trustee v. T. B. and Jacob Hackett, and the case was referred to the commissioner to report thereon. The commissioner fixed the fee of A. R. Burnam, Jr., at $250.00, and W. B. Smith at $1,000.00, half of which to be paid out of the trust fund going to T. B. Hackett, and the other half out of the trust fund going to Jacob Hackett. The report of the commissioner was confirmed and an order entered directing the executors to make the aforesaid payments.

The propriety of the court's action in authorizing a portion of the trust funds to be invested in real estate and state warrants and directing the executors to pay the attorney fees allowed Messrs. Burnam and Smith out

of the corpus of the trust fund, is called in question by this appeal.

1. There can be no doubt that the creator of a trust requiring the investment of money may direct how the investment shall be made, and when this is done, the trustees or those charged with the duty of making the investment can not consistently with the creator's purpose, make any other use of the trust fund than that prescribed by the instrument creating the trust, unless no such investment as is directed can be made or the safety of the investment directed has become doubtful by supervening circumstances. Transylvania University v. Clay, 2 B. Monroe 285; Denike v. Harris, 84 N. Y. 89; Matter of Stewart, 30 N. Y. App. Div. 368, 51 N. Y. Suppl. 1050, 163 N. Y. 593, 57 N. E. 1125; 39 Cyc. 405; Bigstaff's Trustee, et al. v. Bigstaff, 165 Ky. 251, 176 S. W. 1003. It will be observed that the testator first devised a farm in trust to each of his nephews. When he comes to deal with the trust fund created by clause four of his will, he employs the following language:

"I also will that the parts to which Jacob and T. B. Hackett shall be entitled to receive aforesaid be invested by my executors in good and safe securities the income be applied as aforesaid, during their lives, etc." The latter provision is not a mere recommendation by the testator but is a specific direction as to how the funds should be invested, and when this direction is considered in the light of the fact that the testator had by the previous clause of his will devised a farm to each of his nephews, it is clear that he intended that all of the estate devised to his nephews should not be invested in real estate but that a portion thereof should be invested in securities. There is no showing in the record that good and safe securities could not be found, or that such an investment would probably result in loss to the trust estate. Under these circumstances we conclude that the order authorizing the investment of the trust funds in real estate was not authorized. It is true that a different rule was announced in the case of Stone v. Clay, 103 Ky. 314; but an examination of that case will show that the opinion was based on section 4706, Kentucky Statutes, authorizing persons or corporations holding funds in a fiduciary capacity for loan or investment, to invest the same in real estate, mortgage notes or bonds, or in such other interest bearing or dividend paying securities as

are regarded by prudent business men as safe investments, and that the court overlooked section 4708, Kentucky Statutes, declaring that, "the provisions of this chapter shall not be construed to permit a sale, investment or loan in conflict with the provisions of the will, deed or other instrument creating the trust, or under which the funds or property may be held." Indeed it is clear from a consideration of both sections that the right of the creator of a trust to prescribe how the trust funds shall be invested was distinctly recognized and that no change in the prevailing rule was intended. That being true, the case of Stone v. Clay, *supra,* is hereby overruled.

2.   It is next insisted that the chancellor should not have ordered the surplus trust fund to be invested in state warrants.   The point is made that they are not of a permanent character because they may be called at any time and that the chancellor had no right to interfere with the discretion conferred by the will.   We do not regard the fact that such warrants may be called in at any time as sufficient to affect the character of the investment.   As a matter of fact such warrants have behind them the entire resources of the state, and not being subject to taxation, they are generally regarded by prudent business men as very safe investments. While it is true that the executors did not submit to the court the propriety of making such an investment, they did ask the court's advice in the administration of the trust and the distribution of the estate, and the question was specifically raised by T. B. and Jacob Hackett who requested the court to order the investment to be made. The propriety of making the investment was not contested by the executors save to the extent of a more formal objection to the order.   There was money in their hands which they had failed for some time to invest and no other investment than that requested by the trustees was suggested.   In view of these facts we perceive no reason why the order making the investment should be reversed on the ground that it was an interference with the discretion vested in the executors by the testator's will.

3.   With respect to the attorney fees allowed Messrs. Burnam and Smith, the point is made that they should not have been paid out of the trust fund and that the allowance to W. B. Smith is excessive.   It appears that

in the suit of Hackett's Executors v. Hackett's Trustee, J. J. Greenleaf, trustee in bankruptcy of T. B. Hackett and Jacob Hackett, filed an intervening petition by which he sought to subject the interests of T. B. Hackett and Jacob Hackett to the payment of their debts on the ground that each was the sole owner of an estate for life in the property devised to him. The court first adjudged that each took a one-half undivided interest for life in the lands devised to him and ordered such interest subjected to his debts. On appeal this judgment was reversed. Hackett's Executors v. Hackett's Trustee, 118 S. W. 377. On the return of the case, the court adjudged that T. B. Hackett and Jacob Hackett had no separable interest in the property devised to them that could be subjected to the payment of their debts. On appeal it was contended by counsel for the trustee in bankruptcy that "Jacob Hackett and T. B. Hackett take, under the will of B. C. Hackett, life estates in the entire two farms of 250 acres and 300 acres respectively; that neither of the wives nor children of said two parties take or get any interest whatsoever, under said will, in either of the two farms, or the rents or profits arising therefrom, during the lives of Jacob Hackett and T. B. Hackett, respectively"; but this contention was rejected and the judgment affirmed. Hackett's Trustee v. Hackett, 146 Ky. 408, 142 S. W. 60. It will thus be seen that while the purpose of the suit of the trustee in bankruytcy was to subject only the interests of T. B. and Jacob Hackett in the tracts of land devised to them respectively, yet the claim was made that each was the owner of the entire life estate and that his wife and children during his life took no interest in the property devised to him. That being true, it is clear that if this contention had been sustained, the effect would have been to deprive the wife and children of each of all interest in the property for several years and, consequently, to diminish the value of the trust estates to that extent. We, therefore, conclude that the services rendered by Messrs. Burnam and Smith were for the protection and preservation of the trust estates and were properly payable out of the corpus of the estates. Abend v. End. Fnd. Commissioners, 174 Ill. 96, 50 N. E. 1052; Nevitt v. Woodburn, 190 Ill. 283, 60 N. E. 500; Morton v. Barrett, 22 Me. 257, 39 Am. Dec. 575.

4. With respect to the claim that the allowance to W. B. Smith is excessive, we find that the case was re-

ferred to the commissioner to fix a reasonable fee. Not only was the fee allowed W. B. Smith agreed to by each of the trustees, but the allowance was recommended by the commissioner and approved by the chancellor, who had before them the records of the cases in which the services were rendered. In view of the successful result of the suit and of the fact that the case was twice tried below and appealed to this court and that on the last trial W. B. Smith alone briefed the case for the trustees and filed their response to the petition for rehearing, we are not prepared to say that the allowance of $1,000.00 to be paid out of the two trust estates is excessive.

Wherefore the judgment ordering the investment in state warrants, and the judgment ordering the payment of attorney fees out of the two estates, to Messrs. Burnam and Smith, are affirmed, and the judgment ordering the investment of a portion of the trust funds going to T. B. Hackett in the twenty-eight and one-half acre farm and a portion of the trust funds going to Jacob Hackett in the house and lot in Richmond, is reversed and cause remanded for further proceedings consistent with this opinion.